

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Honorable R. L. Thomas, President
Board of Regents
State Teachers Colleges of Texas
Dallas, Texas

Dear Sir:

Opinion No. 0-5824
Re: Authority of State Teachers
Colleges to hold boiler
explosion and personal
liability insurance.

Your letter of January 25, 1944, received in this
office, reads as follows:

"Our State Teachers Colleges since 1915 have
carried a $50,000 group policy covering loss of
physical property, certain liability against per-
sonal injury of death by reason of explosion. This
policy especially protects the colleges against im-
proper attention to the boilers - otherwise called
proper inspection - the main purpose being that
proper care of boilers prevents explosions and con-
sequent losses and damages.

"I had occasion to check into this group policy
recently, due to complaints registered by the presi-
dents of two of our colleges. Dr. Sam H. Whitley,
President of East Texas State Teachers College at
Commerce, was not satisfied with the favorable report
given concerning one of his boilers and hired a plumber
in Greenville who discovered that the boiler in ques-
tion was in a rather precarious condition. Dr. H. W.
Morelock, President of Sul Ross State Teachers College
at Alpine, sent me a copy of a letter Monday which re-
vealed that his inspection service had not been altogether
satisfactory.

"You may be interested to learn that the
General Insurance Company of America has submitted
a Broad Form policy at a smaller rate than we are
now charged by the Hartford Company, even though
this latter company is limited in its protection,
and in a great many instances, their deductibles
would make it impossible for us to recover losses
ranging under $1,000.00 in some cases and under
$500.00 in many others.

"This matter was discussed with Judge Seaver H.
Baker on my recent trip to Austin, and his letter re-
ceived today, states that his Department's appraisal
of the General Insurance Company of America indicates
the company is solvent and reliable. In fact, is one
of the outstanding companies in our nation.

"Judge Baker suggested that before transferring
this insurance to the General Insurance Company of
America, that I ascertain whether or not the Board
of Regents has the authority to pay the premiums.
This question was introduced due to Senate Concurrent
Resolution No. 3, Acts of the 37th Legislature, Second
Called Session, which in effect, prohibits the purchase
of fire insurance upon buildings and contents belong-
ing to the State and its various institutions, except
the University of Texas and its branches.

"However, Judge Sellers, this policy is termed
'Boiler Explosion and Personal Liability Insurance'
rather than fire insurance protection on our buildings,
and since the policy was issued February 13, 1943, for
a period of three years and premium payments have al-
ready been made, it seems that it would be permissible
for the Board to have the above policy cancelled, un-
earned premiums refunded, and place the protection with
the General Insurance Company of America.

"The premiums on the Hartford Steam Boiler policies
for limited coverage for a three year term are $1,555.80,
while the Broad Form policy submitted by the General In-
surance Company of America amounts to $1,555.00, which,
as you will observe, gives us greater protection for a
smaller premium.

"It is my recommendation, since the present
protection is inadequate at such a high rate and
service has not been satisfactory, that this busi-
ness be transferred to the General Insurance Com-
pany of America, and I would like to ascertain if
there is any reason why this may not be done."

The first matter that this department must determine
in order to answer your question is whether the said Teachers
Colleges have the authority in the first place to take out and
hold such insurance policies on their boilers.

In Opinion No. 0-1100 issued from this department in
1939 to G. W. Stakes, Cashier, Texas Prison System, it was held,
among other things, as follows:

"This office on February 14, 1939, in Opinion
No. 0-201, held that the State Board of Health was
unauthorized to insure State property in its posses-
sion against loss by fire unless a specific appro-
priation had been made for that purpose. This opinion
was bottomed upon the proposition that the Legislature
had in Senate Concurrent Resolution No. 3, passed at
the second called session of the 37th Legislature, de-
clared it to 'be the fixed policy of this state to
carry its own insurance upon public buildings and con-
tents, and that no insurance policies shall be taken
out upon any of the public buildings and contents
thereof * * *' Opinion No. 0-842, dated May 25, 1939,
holds that the Commissioner of Agriculture has no au-
thority, in the absence of a specific appropriation for
such purpose, to pay the premium on a fire or casualty
insurance policy issued on certain livestock owned by
the state. An available specific appropriation to pay
the premium on any kind of a policy issued in favor
of the State would amount to a subsequent declaration
of policy by the Legislature and would, to that extent,
repeal the policy announced by the resolution above
referred to."

In Opinion No. 0-184 issued by this department in 1939 to the Honorable Geo. H. Sheppard, Comptroller of Public Accounts, it was held that:

"We are not herein declaring the purposes for which a department may expend its contingent funds, but in the matter of insurance since the policy of the State has been expressed by the Legislature, we do hold that in the absence of a specific appropriation for that purpose, you are not authorized to issue warrants for the payment of insurance premiums."

In Opinion No. 0-3000 to the Honorable H. A. Turner, Secretary, Board of Regents, State Teachers Colleges, of date February 6, 1941, a copy of same being attached hereto, it was held:

"This department has repeatedly held that no insurance policies shall be taken out upon any of the public buildings of this State, nor upon the contents thereof. The reason for this holding is stated in our Opinions No. 0-184 and 0-201, copies of which are enclosed for your information; therefore, you are advised that the premiums for fire insurance, or boiler insurance cannot be paid out of the local college fund or any other funds from the colleges."

Upon careful inspection of the appropriation bill in regard to such colleges as named herein for the years beginning September 1, 1943 and ending August 31, 1945, as contained in the General and Special Laws of Texas, Acts of the 48th Legislature, Regular Session, we find no specific appropriation for the purpose of paying boiler insurance premiums or personal liability insurance premiums. Therefore, this department must again hold that no such insurance policies shall be taken out by the Texas State Teachers Colleges in question.

Honorable R. L. Thomas, page 5

We will not here go into the subject as to what actual benefits such colleges of the State would derive from such policies, if allowed to hold same, as we do not have the insurance policies in question before us for inspection. However, we will refer you, for your own information, as to the worth of same to Opinion No. 0-1100, parts of which are quoted hereinabove, and to a supplement to said opinion, copies of which are attached hereto.

In view of our ruling hereinabove, it is obvious that not having authority to take out and hold the first policy in question, said colleges would not have authority to change to another policy of a different company insuring the same subject matter.

In regard to your troubles in obtaining proper inspection of the boilers, we refer you again to the supplement to our Opinion No. 0-1100, in which attention is called to the fact that the Labor Commissioner of Texas is charged with the responsibility of having all boilers in Texas inspected at certain times or intervals, and "we know of no reason why that department should not properly inspect the State boilers in the same manner that boilers of all private individuals are inspected." And also to Opinion No. 0-3000, in which it was held "with reference to costs incident to the inspection of boilers, it is our opinion that the same may be paid by the various colleges."

In Opinion No. 0-1168, a copy of same being attached hereto, it was held, in regard to the Texas Prison System, that the items of expense incurred in the employment of authorized persons to inspect the boilers of the system may be paid out of the general support and maintenance or contingent expense item of the appropriation. We see no reason why this should not apply in regard to the Teachers Colleges in question.

In regard to your letter of February 3, 1944, in which you inquire further in this matter as follows:

"If you find that we do not have the authority to pay for this premium, I am wondering if we can cancel the existing policy and recover on a short-term rate basis. This policy will have been in force one year February 8th and was purchased on a three year basis, * * *"

we will have to quote you the general rules of law applicable to such policies and, to aid your determination of this problem, give our opinion necessarily circumscribed by our lack of pertinent facts.

In Volume 24, Texas Jurisprudence, on page 749, it is said that:

"Property and liability insurance policies usually contain provisions relating to their rescission or cancellation by either party, dependent upon certain conditions."

On page 751 of said Volume 24 Tex. Jur., it says:

"As a general rule, a policy of insurance may be cancelled by mutual agreement of the parties, independently of the terms of the contract, and notwithstanding a standard policy provision for cancellation after notice, although to have this effect the minds of the parties must have met on cancellation."

We see no reason why, under some of the provisions of the next above set out rules of law, you would not be allowed to cancel the policy or policies and recover any such part of the premium as is unearned.

Hoping this fully advises you as to all your questions on this subject, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Robert L. Lattimore Jr.

Robert L. Lattimore, Jr.
Assistant

APPROVED FEB 8, 1944

ATTORNEY GENERAL OF TEXAS

RLL:EP

Encl.

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN